

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

Michelle C. Gable
_____
(Name of Plaintiff)

vs. Washington Corrections Center
for Women (WCCW)

Jo Wofford, Superintendent WCCW

John Doe, WA DOC Superintendent

DR. Rain Carei, Psychologist

Paul Clark, HSM/ADA Coordinator

MR. Shulze, CUS
(Names of Defendant(s))
Adam Perkins, HSM
DR. Lisa Anderson-Longano, Medical Physician

3:18-CV-05266-RBL-TLF

CIVIL RIGHTS COMPLAINT
BY A PRISONER UNDER 42
U.S.C. § 1983

## I. Previous Lawsuits:

A. Have you brought any other lawsuits in any federal court in the United States while a prisoner?:

☐ Yes   ☒ No

B. If your answer to A is yes, how many?:_____. Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

   Plaintiff:_____

   Defendants:_____
   _____

2. Court (give name of District):_____

3. Docket Number: _____

III. PARTIES TO THIS COMPLAINT:

Defendants:
A. Jo Wofford, Superintendent of Washington Corrections Center for Women (WCCW); Responsible for the well-being of all offenders and overall operation of the facility.
B. John Doe, Superintendent of Washington Department of Corrections; Responsible for all DOC facilities and offenders throughout Washington, to include Washington Corrections Center for Women.
C. DR. Rain Carei, psychologist, decision maker for mental health department and units COA, Tec Acute, and Tec Res; Provided mental health "plan" for Plaintiff.
D. Paul Clark, Health Services Manager, WCCW ADA Coordinator; Responsible for all WCCW ADA requests.
E. Adam Perkins, Health Services Manager; Responsible for offender health services.
F. Dr Lisa Anderson-Longano, medical physician assigned to Plaintiff; Responsible for Plaintiff's physical healthcare.
G. Mr Shulze, Correctional Unit Supervisor (CUS) for THU, RDC-A, RDC-B; Responsible for units.
H. All defendants listed A-G are sued in both their official and individual capacities.

4. Name of judge to whom case was assigned: _____

5. Disposition (For example: Was the case dismissed as frivolous or for failure to state a claim? Was it appealed? Is it still pending?):
_____

6. Approximate date of filing lawsuit: _____

7. Approximate date of disposition: _____

**II. Place of Present Confinement:** Washington Corrections Center for Women (WCCW)

    A. Is there a prisoner grievance procedure available at this institution?  ☒ Yes   ☐ No

    B. Have you filed any grievances concerning the *facts* relating to this complaint?
        ☒ Yes   ☐ No

    If your answer is NO, explain why not: _____
_____

    C. Is the grievance process completed?   ☐ Yes   ☒ No

**If your answer is YES, ATTACH A COPY OF THE <u>FINAL</u> GRIEVANCE RESOLUTION for any grievance concerning facts relating to this case.**

**III. Parties to this Complaint**

    A. Name of Plaintiff: Michelle C. Gable   Inmate No.: 404465
    Address: Washington Corrections Center for Women
    9601 BUJACICH ROAD NW   GIG HARBOR, WA 98332

(In Item B below, place the full name of the defendant, his/her official position, and his/her place of employment. Use item C for the names, positions and places of employment of any additional defendants. Attach additional sheets if necessary.)

    B. Defendant: (See attached)   Official Position: _____

    Place of employment: _____

    C. Additional defendants  (See attached) _____

3

**IV. Statement of Claim**

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates, places, and other persons involved. Do not give any legal arguments or cite any cases or statutes. If you allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets if necessary.)

ON ATTACHED SHEETS

**V. Relief**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

# IV. STATEMENT OF CLAIM:

## A. BACKGROUND

1. Plaintiff is an offender at WCCW with 2 disabilities.
2. Plaintiff arrived at WCCW as an interstate compact transfer from Montana Womens Prison (MWP) with no notice on 20 December 2017.
3. Plaintiff requires the use of a wheelchair and cannot walk since a fall in 2012.
4. Plaintiff also suffers from a documented chemical injury disability resulting from a significant chemical exposure in 1998.
5. The chemical injury diagnosis is medically documented, being diagnosed by general practitioner(s), an internist, and a specialist who limited her practice to the research and treatment of chemical injury.
6. Plaintiff has met the qualifications of a disability under the Americans With Disabilities Act (ADA) as the disability limits the major life activity of breathing, and Plaintiff has been "regarded" as having this physical disability by various government agencies to include Montana Department of Public Health and Human Services, Vocational Rehabilitation, Montana Department of Corrections, Montana Womens Prison, North Dakota Department of Labor, etc.
7. MWP took Plaintiff to a Physician outside of the prison in 2015, who concurred with and affirmed the chemical injury diagnosis, complete with medical ICD-9 codes.
8. Litigation was brought forth in Montana to compel MWP to grant reasonable accommodations under the ADA.
9. A Voluntary Resolution Agreement of October 2014 and Mutual Settlement Agreement of December 2015 set forth specific accommodations MWP agreed to provide, such as: permission to return to cell if sickened by an exposure; baking soda for Plaintiff to wash hair, self, and clothing; housing in the smallest pod/housing unit to limit exposures with an average of only 4-5 inmates.
10. The chemical injury is described by Plaintiff's Physician as a hypersensitivity to airborne chemicals and airborne chemical odors and fragrances at levels normally tolerated by the healthy population.
11. With exposures, Plaintiff experiences chest pain (severe and intractable at times), breathing difficulties, lightheadedness, weakness, burning of eyes, nose and throat, confusion, etc. These reactions do not disappear immediately after removal from an offending substance, but can last from hours to days, due to the body's inflammatory response and neural sensitization cycle.
12. One Physician note states that a significant exposure can be life threatening and repeated lower exposures can render Plaintiff even more permanently disabled.
13. At MWP, Plaintiff was always single-celled, and must be, due to disability.
14. Plaintiff provided WCCW a Physician Note which stated the Plaintiff is entitled to a living environment with reduced exposures as a reasonable accommodation under the Americans With Disabilities Act,

B. WCCW Actions Since Plaintiff's Arrival:

15. Since Plaintiff's arrival on 20 December 2017, WCCW has refused to accommodate Plaintiff's disability, choosing to view Plaintiff's long established physical disability as a mental issue.

16. Any "new" mental diagnosis is wholly separate and secondary to Plaintiff's medically documented and "recognized" physical disability.

17. WCCW housed Plaintiff in The Close Observation Area (COA), a small mental health unit with 9 cells, bright lights that remain on 24/7, 24/7 lockdown with no activities or fresh air, from 21 December 2017 to 22 January 2018. Plaintiff was given 2 suicide blankets and a sleeping mat.

18. Plaintiff did not understand why she was being held in COA, The unit where offenders who are a danger to themselves or others, suicidal, or delusional are held. Plaintiff was told she was being evaluated by mental health through observation. Plaintiff signed the consent form that she did NOT CONSENT to evaluation, but was told it was involuntary.

19. Plaintiff spent 1 night in TecAcute (20 Dec 2017), a small mental health unit, but was moved to COA the following day due to wheelchair and accessibility issues.

20. Plaintiff was successfully housed in THU (Temporary Housing Unit) from 22 January 2018 to 29 January 2018, a small housing unit of 20 or so offenders waiting for permanent housing.

21. On 29 January 2018, WCCW moved Plaintiff to a large unit Reception and Diagnostic Center (RDC-B), where newly arriving offenders are housed as they proceed through orientation and classification. RDC-B had poor ventilation in the cell and the airborne chemicals were so strong in Plaintiff's cell, that Plaintiff experienced immediate difficulties and informed custody staff. Despite her obvious distress, Plaintiff was not removed from the cell in a timely fashion, and endured much unnecessary and severe chest pain, which persisted throughout the night and necessitated going to sick call in the morning. Eventually, the on-duty sergeant agreed to move Plaintiff to RDC-A, a unit half the size of RDC-B, with a well-ventilated cell, where she remained and did very well, physically, until 28 February 2018.

22. Plaintiff states that the lesser number of offenders in a unit, thus corresponds to lesser exposures to cleaning and disinfecting products, and lesser exposures to highly scented personal hygiene products. Additionally, in RDC-A, the cleaning cart was only available for 1 hour after breakfast for offenders to clean their cells, then it was placed in a locked janitor's closet. These factors, and the fact that there was no on-site laundry operation, all contributed to the successful housing of Plaintiff in RDC-A, small unit.

23. On 28 February 2018, Plaintiff was moved to the Close Custody Unit (CCU), which houses over 100 offenders in a single housing unit, with 9 open showers on the side of the dayroom, open-bay on unit 13 hour a day, 7 days a week laundry operation venting chemical detergent fumes into the air. That's 100 offenders showering daily with highly scented commissary soaps, shampoos,

6

23. (continued) lotions, etc. right in the unit; 100 offenders cleaning and disinfecting their cells and showers throughout the day; much continual dayroom cleaning and disinfecting. The cleaning carts remained on the unit 24/7. Offenders also burn incense and heat essential oils to air freshen their cells.

24. Airborne chemicals and chemical odors and fragrances do not stop at cell doors, but rather re-circulate throughout the entire housing unit and all cells in it, in such a confined living environment with windows that do not open.

25. Plaintiff experienced chest pain and breathing issues right away when moved to CCU on 28 February 2018, but remained in her assigned cell with the door closed and tried to mitigate anything in the room that might be sickening her, due to disability, by washing down all surfaces she could reach with water. However, Plaintiff continued to be sickened severely to the point that she contemplated ending her own life versus enduring such unnecessary and severe pain and suffering with no means to mitigate, and she asked for help.

26. Plaintiff was moved to COA on 28 February 2018, for safety, by the custody staff.

27. On 26 March 2018, the prison, again, knowing Plaintiff is sickened with all the exposures in CCU, sent Plaintiff back to CCU where she was forced to sit in the dayroom, despite her obvious distress, being exposed to the laundry operation fumes, the shower fumes, the incense burning, etc., providing a mental health counselor to "talk her through" the severe chest pain and difficulty breathing due to her body's physical reaction with inflammation, etc. On this date, Plaintiff experienced painful burning in her eyes, nose and throat, along with substantial chest pain lasting throughout the night, even after she was finally removed by custody staff and sent back to COA.

28. Plaintiff currently remains in COA since 28 February 2018, with the threat that she "WILL" be sent to CCU at any time.

29. At WCCW, all decisions regarding Plaintiff's medical care, mental health care, and housing are made by "The Treatment Team" which consists of Dr Rain Carei, psychologist, along with Dr Brodie, psychologist, Dr Geisler, psychologist, Dr Aronoff, psychologist, Dr Hill, psychiatrist, Dr Lisa Anderson-Longano, medical Physician assigned to Plaintiff, Mr Paul Clark, Health Services Manager (HSM) and WCCW ADA Coordinator, Mr. Adam Perkins, Health Services Manager for medical care, Correctional Unit Supervisor, Mr Shulze, for THU, RDC-A and RDC-B, Correctional Unit Supervisor Bennett for units COA, Tec Acute and Tec Res, and Correctional Unit Supervisor Ms. Stromberg for CCU.

C. Plaintiff Claims Disability Discrimination and Failure To Accommodate:

30. Plaintiff provided WCCW pertinent medical documentation of her disability and medical recommendations from treating physicians.

31. One note from Plaintiff's Physician specifically states that Plaintiff is entitled to an environment with reduced chemical exposure, as a disabled person, under The Americans With Disabilities Act.

32. Thus, as a reasonable accommodation under The ADA, Plaintiff has petitioned Paul Clark (HSM/ADA) and Dr. Rain Carei, psychologist, to be "housed" in either RDC-A, THU, or TECACUTE, smaller units of 20 or so offenders, thus much less chemical exposure, no incense burning, no on-site laundry. Further, Plaintiff was successfully housed in these units.

33. Plaintiff has petitioned both verbally and in writing via offender kite, to be permitted full access to all the programming, classes, activities, and employment of a general population offender, even though she must be housed separately in a smaller unit, with lesser continual airborne exposures, solely due to disability. Plaintiff requested to be "attached" to the CCU schedule for dining hall meals and activities off pod, without having to reside "IN" CCU, but rather reside in a smaller unit.

34. This request would merely be a minor "stroke of the pen" reasonable accommodation of a "Procedure/Practice/Policy Modification" under The ADA, which is permissible under DOC policy 600.400 "Offenders With Disabilities".

35. Plaintiff's requests for accommodations have been denied, even though other offenders and their disabilities have been readily accommodated at WCCW.

36. Upon information and belief, in speaking with WCCW staff and offenders, Plaintiff has learned that one obese offender was accommodated by a "Procedure/Practice/Policy Modification" changing a 2 person cell to a single cell and monies spent on wider bunk and sleeping pad. Another offender is housed permanently in TecAcute for her mental health disability, another "stroke of the pen" reasonable accommodation, as TecAcute is designed to be a short term Treatment and Evaluation Center. Another offender is housed single-celled due to predatory behavior. Another offender is given candy bars as an incentive to shower. And another offender is given 2 food snacks each day for good behavior. Another offender was accommodated with a specially-built wheelchair.

37. Plaintiff's chemical injury disability did not suddenly disappear when she rolled into WCCW, and WCCW should not be permitted to avoid accommodation of a physical disability by suddenly

8

37. (continued) "stating" the Plaintiff does not have a physical disability, but substituting a "new" broad, catch-all mental diagnosis, which can be treated with Talk Therapy and coping skills time which includes coloring and puzzles.

D. Plaintiff Claims Intentional Infliction of Emotional Distress

38. From the day Plaintiff arrived at WCCW, she was told by the Defendants that there is no single-celling at WCCW, period. And that Plaintiff would have a roommate. This created much emotional distress in Plaintiff, who later learned this was untrue, that some offenders are indeed housed in single cells.

39. Plaintiff communicated with Mr. Paul Clark, Health Services Manager and ADA Coordinator, and Dr. Rain Carei, psychologist, chief decision maker, verbally and in writing via offender kites of her need to be housed single-celled due to chemical injury disability, as a reasonable accommodation under the ADA.

40. Plaintiff explained to them that being housed with another offender and her highly scented soaps, lotions, shampoos, etc. and liberal disinfectant use in cell is like being housed in a room full of cats; if you are extremely allergic to cats; you just can't physically do it.

41. Defendants are continually placing Plaintiff in CCU, a larger unit with over 100 offenders with conditions so severe and painful to Plaintiff, due to disability, that on 28 Feb 2018, she contemplated ending her own life, versus enduring such unnecessary and intractable pain and suffering with no means to mitigate, and asked for help.

42. Defendants again placed Plaintiff in CCU on 26 March 2018, and Plaintiff began to take measures to end her life, before being removed by custody staff.

43. Defendants have told Plaintiff she WILL be housed in CCU. Period. Any day now. Thus creating much emotional distress in Plaintiff.

44. At Montana Womens Prison, Plaintiff became so sickened in a general population housing unit of 24 women with 3 open showers, that Plaintiff spent the next 3 years, 23/7 lockdown on an ad seg (administrative segregation) unit, averaging 4-5 inmates, no common dayroom, no on-site laundry, 1 closed shower room with exhaust ventilation.

45. Plaintiff is continually told that the accommodations made by MWP do not apply at WCCW, and that her only disability is the need for a wheelchair, and a "new" broad, catchall mental diagnosis.

E. Plaintiff claims a violation of her civil rights under 42 U.S.C. §1983, The right to be free from cruel and unusual punishment under the 8th amendment to The US Constitution:

46. Plaintiff states that her right to breathe and not be sickened because of her disability and the actions of other offenders is inherent, and that she is entitled to the same quality of life as afforded to a non-disabled offender, and this is easily achievable by housing Plaintiff in a smaller unit.

47. Plaintiff cannot use any soaps, lotions, shampoos, etc. and was provided baking soda at MWP, and thus, cannot be housed with another offender due to such and also the liberal use of disinfectant in cell.

48. Plaintiff believes that since the prison allows offenders to burn incense and heat essential oils to air freshen their cells, allows offenders to purchase highly scented soaps, shampoos, lotions, hair products, etc., in a closed living environment where air re-circulates throughout the entire pod/housing unit and all cells in it, that WCCW has a duty to protect her health and safety, due to disability, and this can be accomplished by housing Plaintiff in a smaller unit.

49. Housing Plaintiff in CCU, with over 100 offenders, continuous laundry, etc. produces severe and intractable pain and suffering, solely due to disability and amounts to cruel and unusual punishment to Plaintiff because of her chemical injury disability.

F. Plaintiff claims violation of her Civil Rights under The Americans With Disabilities Act:

50. Defendant refuses to reasonably accommodate Plaintiff's disability under the ADA and discriminates against Plaintiff and Plaintiff's specific disability, while readily accommodating the disabilities of other offenders.

# V. RELIEF

Wherefore, Plaintiff prays for the following Relief:

1. Defendant WCCW house Plaintiff single-celled. (Other offenders are housed single-celled for obesity, mental disability, etc.)

2. Defendant WCCW house Plaintiff in a smaller unit with reduced airborne chemical and chemical odor/fragrance exposures. RDC-A, THU, and TEC Acute are smaller units with 20 or so offenders, (versus 100+ in CCU or MSU), no incense or essential oil burning, no on-site laundry.

3. Defendant WCCW continue to permit Plaintiff blue sleeping mat, as the newer grey ones exacerbates Plaintiff's breathing due to material.

4. Defendant WCCW permit Plaintiff to immediately leave an area or activity if sickened and return to her housing unit. (This was granted at MWP and is sometimes needed due to cleaning or maintenance.)

5. Defendant WCCW allow for all the classes, programming, activities, and employment of a general population offender, even though Plaintiff must be housed separately, in a smaller unit, solely due to disability. This is merely a minor "stroke of the pen" Reasonable Accommodation of "Procedure, Practice, Policy Modification" under the Americans With Disabilities Act, permissible under WA DOC policy 600.400.

6. Defendant WCCW cease from continually threatening Plaintiff that she will be housed with a roommate and will be housed in CCU with over 100 offenders and the massive chemical exposures that sickened Plaintiff, creating much emotional distress, for the conditions were so severe to Plaintiff, due to her chemical injury disability that Plaintiff contemplated ending her own life versus enduring such unnecessary and intractable pain and suffering with no means to mitigate.

7. Defendant WCCW grant access to Plaintiff to all her legal paperwork and the law library for pending legal case. Since her arrival on 20 December 2017, 3 months later, Plaintiff is still denied access.

8. Defendant WCCW re-imburse Plaintiff and pay all costs for this legal action brought about because of their disability discrimination, failure to accommodate, civil rights violations, actual physical harm to Plaintiff, and intentional infliction of emotional distress.

9. Defendant WCCW pay Plaintiff compensatory damages for: a) inappropriately housing Plaintiff in the COA with bright lights on 24/7, no fresh air, no activities from her arrival on 20 Dec 2017 until 22 Jan 2018, and again 28 February 2018 to the present, instead of merely housing her in an appropriate smaller unit due to disability; b) disability discrimination and failure to accommodate, when the disabilities of other offenders are readily accommodated; c) intentional infliction of emotional distress, d) actual physical harm, pain and suffering for inappropriately housing Plaintiff

9. (continued) in larger unit RDC-B on 22 Jan 18 and 29 Jan 18, and CCU on 28 Feb 2018 and 26 March 2018; e) denial of activities, programs, classes, library, law library, commissary food, normal parts of offender Quality of Life, for her entire time at WCCW, over 3 months.

10. Defendant WCCW pay Plaintiff Punitive Damages for the violation of her Civil Rights under the 8th Amendment to the United States Constitution and the violation of her Civil Rights, as a disabled person, under the Americans With Disabilities Act, to prevent continued violation of Plaintiff's Civil Rights.

11. Defendant WCCW provide Plaintiff any other Relief that this Court deems just and appropriate.

ON ATTACHED SHEETS
_____
_____
_____
_____
_____
_____
_____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __28th__ day of __March__ 20 __18__.

_____
(Signature of Plaintiff)

Michelle C. Goble