1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6   MICHELLE C GABLE,

7                         Plaintiff,

8           v.

9   WASHINGTON CORRECTIONS CENTER
    FOR WOMEN,

10                        Defendants.

Case No. C18-5266 RBL-TLF

REPORT AND
RECOMMENDATION

Noted for March 13, 2020

11

12          Plaintiff, proceeding *pro se* and *in forma pauperis*, brought this action against

13   Washington Corrections Center for Women ("WCCW") and several officials at WCCW,

14   for alleged violations of the Eight Amendment and the Americans with Disabilities Act

15   ("ADA"). Dkt. 3. Pending before the Court is defendants' Motion for Summary Judgment.

16   Dkt. 59. For the reasons set forth below, the undersigned recommends that the Court

17   **GRANT** defendants' Motion for Summary Judgment.

18                      FACTUAL AND PROCEDURAL HISTORY

19          In opposition to defendants' motion, plaintiff submitted her declaration (Dkt. 73)

20   with several attached exhibits (Dkt. 73-1). In support of this motion, defendants

21   submitted the following documents: the Declaration of Dr. Lisa Anderson-Longano (Dkt.

22   60); the Declaration of Dr. Tiffany R. Carei (Dkt. 61); the Declaration of Paul Clark (Dkt.

23   62); and the Declaration of Edwin Schulze (Dkt. 63).

24
25

1    Plaintiff alleges that on December 20, 2017 she was transferred from Montana

2  Women's Prison to WCCW. Dkt. 3 at ¶ 2; Dkt. 73 at ¶ 4. She alleges that she suffers

3  from two documented disabilities, one requiring the use of a wheelchair and the other is

4  identified as a "chemical injury." Dkt. 3 at ¶¶ 3-4; Dkt. 73 at ¶¶ 5-6. Plaintiff states that

5  general practitioners, internist and a specialist diagnosed her chemical injury disability.

6  Dkt. 3 at ¶ 5; Dkt. 73 at ¶¶ 8-11. Plaintiff asserts the chemical injury disability limits her

7  ability to breath. Dkt. 3 at ¶ 6.

8    Plaintiff explains that the chemical injury disability is "a hypersensitivity to

9  airborne chemicals and airborne chemical odors and fragrances at levels normally

10  tolerated by the healthy population." *Id.* at ¶ 10. Plaintiff describes the symptoms of this

11  chemical injury disability as: "chest pain (severe and intractable at times), breathing

12  difficulties, lightheadedness, weakness, burning of eyes, nose and throat, and

13  confusion." *Id.* at ¶ 11; *See also*, Dkt. 73 at ¶ 42. Plaintiff also states that these

14  symptoms can last for hours and days after being removed from the substances that

15  triggered the response. Dkt. 3 at ¶ 11; Dkt. 73 at ¶ 43.

16    Plaintiff states that while she was at Montana Women's Prison, she received

17  special accommodations, but officials at WCCW refuse to give her similar

18  accommodations because the officials view plaintiff's condition as a psychological

19  condition rather than a physical one. Dkt. 3 at ¶¶ 9, 15-16.

20    Defendants allege that when plaintiff first arrived at WCCW she met with Dr. Lisa

21  Anderson-Longano to describe the chemical injury disability. Dkt. 59 at p. 2; Dkt. 60 at

22  ¶¶ 4-5. Defendants state that Dr. Anderson-Longano reviewed plaintiff's symptoms

23  along with her medical records and ordered testing for plaintiff. Dkt. 59 at p. 2; Dkt. 60 at

24

25

¶¶ 4-6. Plaintiff declined the recommended pulmonary function testing. Dkt. 59 at p. 2; Dkt. 60 at ¶¶ 7. Dr. Anderson-Longano states that she did not observe physical evidence of the symptoms alleged, and noted that anxiety or related conditions could also contribute to plaintiff's reported pain and suffering. Dkt. 60 at ¶¶ 5-10.

The parties agree that when plaintiff arrived at WCCW she was placed in the Treatment and Evaluation Center ("TEC") on December 20, 2017. Dkt. 3 at ¶ 19; Dkt. 59 at p. 3; Dkt. 61 at ¶ 4; 63 at ¶ 5; Dkt. 73 at ¶ 14. The parties also agree that on December 21, 2017, plaintiff was moved from TEC to the Close Observation Area ("COA"). Dkt. 3 at ¶ 19; Dkt. 59 at p. 3; Dkt. 61 at ¶ 4; 63 at ¶ 5; Dkt. 73 at ¶ 15. The parties disagree on why plaintiff was moved to the COA unit. Defendants allege that plaintiff was moved due to safety concerns, because plaintiff threatened to throw herself from her bunk. Dkt. 61 at ¶ 4. Plaintiff alleges that officers at WCCW refused to help her down from her bunk onto her wheelchair and misinterpreted her statement regarding falling off the bunk without their help. Dkt. 73 at ¶ 15.[1]

The parties agree that on January 22, 2018, plaintiff was transferred from the COA to the Temporary Housing Unit ("THU"), a small housing unit for offenders waiting for permanent housing. Dkt. 3 at ¶ 20; Dkt. 59 at p.3; Dkt. 63 at ¶ 5; Dkt. 73 at ¶ 20. Defendant alleges that on January 22, 2018, plaintiff was transferred from THU to Reception and Diagnostic Center ("RDC") B unit. Dkt. 59 at p. 3; Dkt. 63 at ¶ 6. Plaintiff alleges that she stayed at THU from January 22, 2018 to January 29, 2018 and was subsequently moved to RDC-B. Dkt. 3 at ¶ 21; Dkt. 73 at ¶ 20.

---

[1] The parties also disagree on the conditions of her confinement while in COA related to her wheelchair. Dkt. 59 at p. 3; Dkt. 73 at ¶ 15-16. However, plaintiff's complaint does not allege any causes of actions regarding her mobility related disability. Accordingly, these facts are not relevant to this motion.

REPORT AND RECOMMENDATION - 3

1     Plaintiff states that RDC-B had poor ventilation and exposed her to chemicals,

2 which caused "immediate exacerbation of [her] physical disability, resulting in severe

3 chest pain and shortness of breath." Dkt. 3 at ¶ 21; Dkt. 73 at ¶ 21. Plaintiff was not

4 moved after the initial medical complaints. Dkt. 3 at ¶ 21; Dkt. 59 at p. 3; Dkt. 63 at ¶ 6;

5 Dkt. 73 at 21. Defendants allege that plaintiff was moved the same night she arrived at

6 RDC-B and was transferred to RDC-A by the on-duty sergeant as part of a negotiated

7 resolution of her complaint. Dkt. 59 at p. 3; Dkt. 63 at ¶ 6. Plaintiff contends that the on-

8 duty sergeant moved her from RDC-B to RDC-A after plaintiff "tried to pop a vein in [her]

9 hand in order to pass out due to the unbearable pain." Dkt. 73 at ¶ 21. Plaintiff alleges

10 that she was held at the mental health outpatient building overnight and was transferred

11 to RDC-A the next morning. Dkt. 3 at ¶ 21. Dkt. 73 at ¶ 21.

12     Plaintiff states that RDC-A is smaller than RDC-B and has better ventilation. Dkt.

13 3 at ¶ 21; Dkt. 73 at ¶ 22. Defendants allege that while plaintiff was housed at RDC-A,

14 plaintiff's counselor, medical staff, mental health staff and custody staff all agreed that it

15 was appropriate to slowly integrate plaintiff back into less restrictive general population

16 housing. Dkt. 63 at ¶ 8. On February 27, 2018, plaintiff was transferred from the RDC

17 unit to the Close Custody Unit ("CCU"), a general population unit. Dkt. 63 at ¶ 9; Dkt. 73

18 at ¶ 23. Plaintiff alleges that she cannot be housed at CCU because it exposes her to

19 chemical detergent fumes as well as chemicals from other inmates' soaps, shampoos,

20 lotions, cleaning supplies, disinfectant supplies, incense and essential oils. Dkt 3 at ¶

21 23; Dkt. 73 at ¶¶ 23-24.

22     Plaintiff alleges that after being moved to CCU she experienced chest pain and

23 shortness of breath, but remained in her cell with the door closed trying to mitigate the

24

25

condition by wiping down all surfaces she could reach with water. Dkt. 3 at ¶ 25; Dkt. 73 at ¶ 25. Plaintiff alleges that she continued to feel sickened by the conditions of the cell and was removed from CCU the same day after expressing that she was contemplating suicide. Dkt. 3 at ¶¶ 25-26; Dkt. 73 at ¶ 25.

Defendants contend that plaintiff visited CCU prior to being moved to the unit and displayed no signs of distress until she was placed in a cell. Dkt. 63 at ¶ 9. Defendants allege that when they closed the cell door she immediately called a medical emergency due to breathing conditions that she claimed were caused by the cork board on the wall. *Id*. Defendants state that, per plaintiff's request, defendant Schulze instructed a janitor to wipe down the room using only water. *Id*. Defendants state that plaintiff was removed from CCU on February 27, 2018 after reporting thoughts and intentions of committing suicide if she had to remain in CCU. Dkt. 61 at ¶ 7.

Plaintiff asserts that on March 26, 2018, WCCW, knowing that CCU "sickened" plaintiff, sent her back to CCU with a mental health counselor to help her adjust to the unit. Dkt. 3 at ¶ 27; Dkt. 73 at ¶ 26. Plaintiff alleges that she had to be removed from CCU and returned to COA after experiencing chest pain, shortness of breath, and burning in her eyes, nose and throat. Dkt. 3 at ¶ 27; Dkt. 73 at ¶ 26. Plaintiff contends that from March 26, 2018 to May 14, 2018 she remained at COA with no outside access or activities because she could not tolerate the large unit at CCU. Dkt. 73 at ¶ 27.

Plaintiff states that she has provided officials at WCCW medical documentation of her disability and has requested the same accommodations she was provided at Montana Women's Prison. Dkt. 3 at ¶¶ 30-32; Dkt. 73 at ¶ 35. Plaintiff alleges that she

has requested she be permanently housed at a smaller unit with the ability to program and participate in activities in the general population unit. Dkt. 3 at ¶ 33; Dkt. 73 at ¶ 49.

Defendants state that plaintiff expressed an interest in different activities at WCCW and that defendants have worked with plaintiff to develop a transition plan to help her transition to doing activities at CCU. Dkt. 61 at ¶¶ 8-10. Defendants allege that plaintiff is now on a plan where she spends half her day in CCU in programming, recreational activities or educational programs, with the option to take breaks as needed and the ability to call a medical emergency or mental health crisis at any time and receive immediate assistance. Dkt. 61 at ¶ 10. Defendants explain that plaintiff is still considered COA status, but is sleeping in an Inpatient Unit because plaintiff believes this unit provides better air quality. *Id.*

Similarly, plaintiff alleges that since May 14, 2018, she has been allowed to sleep at COA or the Inpatient Unit, but program out of CCU on weekdays. Dkt. 73 at ¶ 28. Plaintiff states that she is allowed to participate in activities in CCU and is allowed to take breaks when she feels overwhelmed. *Id.* Plaintiff also states that COA and the Inpatient Unit are smaller units that provide the least exposure to airborne chemicals, chemical odors and fragrances known to make her sick. *Id.* at ¶ 29. Plaintiff informs the Court that this plan allows her "to access programming and activities, including church, library, gym, dining hall, and most importantly fresh air throughout the day." *Id.* at ¶ 30.

Plaintiff asserts that although she disagrees with defendants treating her condition as a mental health issue rather than a physical disability; the current plan is acceptable because it meets her physician's recommendations. *Id.* at ¶ 50.

However, plaintiff expresses concern that defendants' plan to move her to a Medium Security Unit which will purportedly expose plaintiff to more chemical and fragrances than what she experienced at CCU. *Id.* at ¶ 31-32. Plaintiff alleges that she has expressed these concerns to defendants and has requested permanent housing in a small unit such as COA or IPU. *Id.* at ¶¶ 33-49. Plaintiff states that her goal in this litigation is be granted permanent housing in a smaller unit. *Id.* at ¶ 53.

<u>DISCUSSION</u>

Summary judgement is supported if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure (FRCP) 56 (c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.*, at 255. However, the Court is not allowed to weigh evidence or decide credibility. *Anderson*, 477 U.S. at 255. If the moving party meets their initial burden, an

adverse party may not rest upon the mere allegations or denials of his pleadings; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

In response to the motion for summary judgement, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon*, 698 F.3d 715, 728-29 (9th Cir. 2012).

1.  Americans With Disabilities Act

Pursuant to Title II of the ADA:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, program, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The term "qualified individual with a disability" means:

> [A]n individual with a disability who, with or without reasonable modification to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provisions of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A public entity includes any State or local government as well as any department, agency or instrumentality of a State or local government. 42 U.S.C. §

12131(1). These provisions extend to discrimination against inmates detained in state prisons. *Updike v. Multnomag Cty.*, 870 F.3d 939, 949 (9th Cir. 2017) (citing *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

In order to prevail under Title II of the ADA, the plaintiff must show: (1) the plaintiff is a qualified individual with a disability; (2) the plaintiff was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of the disability. *Cohen v. City of Culver*, 754 F.3d 690, 695 (9th Cir. 2014).

A. Claims for Damages

Compensatory damages are only available under Title II if the plaintiff can show discriminatory intent. *Updike*, 870 F.3d at 950. "A public entity may be liable for damages under Title II of the ADA […] 'if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to a disabled person." *Id.* at 951 (quoting *Mark H. v. Lemahieu*, 513 F.3d 922, 937-938 (9th Cir. 2008)). Deliberate indifference in this context requires "knowledge that a harm to a federally protected right is substantially likely and a failure to act upon that likelihood." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). The first prong is satisfied when the plaintiff identifies a "specific, reasonable and necessary" accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. *Updike*, 870 F.3d at 951. Additionally, the alleged failure to act must be conduct that is more than negligent, it must be deliberate. *Id.*

Plaintiff alleges that defendants have violated Title II of the ADA by not providing her requested accommodation of being housed in a smaller unit of approximately 20 inmates, with less chemical exposure, no incense burning, and no on-site laundry. Dkt. 3 at ¶¶ 31-32. Plaintiff also alleges that she has requested full access to all the programing, classes, activities and employment offered to inmates in the general population, while still residing in a smaller unit separate from the general population unit. *Id.* at ¶ 33. Plaintiff also requested to be allowed to participate in CCU dining hall and other activities without residing at CCU. *Id.*

First, the undersigned notes that there appears to be a genuine dispute of fact regarding the extent of plaintiff's alleged disability. Defendants assert that plaintiff does not have a respiratory disability because WCCW doctors have not observed objective physical symptoms of the purported respiratory disability. Dkt. 59 at p. 10. On the other hand, plaintiff alleges that she has a physical chemical injury disability and submitted reports from treating physicians in support of her position. Dkt. 73. Accordingly, whether plaintiff has a physical chemical injury disability is a genuine question of fact that should not be decided on summary judgment. However, because plaintiff alleges that her disability has been accommodated, this question of fact is not material.

Plaintiff's declaration in opposition to defendants' motion states that since May of 2018, WCCW has allowed her to sleep at nights and spend 24 hours on weekends at COA or an Inpatient Unit. Dkt. 73 at ¶ 28. Plaintiff also states that WCCW is currently allowing her to attend programming in CCU and participate in various activities in CCU, with access to an outside area when exposure to CCU becomes overwhelming. *Id.* Plaintiff also informs the Court that COA and the Inpatient Unit, where plaintiff is

1   housed, are small units with no laundry operations, no incense burning, no essential

2   oils, and adequate ventilation. *Id.* at ¶ 29. Due to these conditions, plaintiff states that

3   COA and the Inpatient Unit are "readily accessible with the least amount of exposure to

4   airborne chemicals and chemical odors and fragrances known to, and proven to, sicken

5   [her]." *Id.* This program allows plaintiff to access "programming and activities, including

6   church, library, gym, dining hall, and most importantly, fresh air throughout the day." *Id.*

7   at ¶ 30. Plaintiff states that these accommodations are acceptable because they meet

8   her physician's recommendations. *Id.* at ¶ 50.

9       Based on the facts and evidences presented by plaintiff, it appears defendants

10  have granted plaintiff's requested accommodations. Plaintiff has access to the programs

11  and activities available to the general population inmates while still residing in a small

12  unit with limited exposure to chemicals, odors and fragrances. Accordingly, plaintiff

13  cannot demonstrate that defendants are currently failing to provide meaningful access

14  or reasonable accommodations on the basis of her disability.

15      Plaintiff states that defendants have granted her requested accommodations

16  since May of 2018. Dkt. 73 at ¶ 28. With regards to the time period before May of 2018,

17  plaintiff states that each time defendants moved her to a unit that triggered the

18  symptoms of her purported disability, she informed staff and the staff removed her from

19  the area on the same day. Dkt. 73 at ¶¶ 21, 25-27. The only time that plaintiff alleges

20  that she did not have access to programming and activities was between March 26,

21  2018 and May 14, 2018. Dkt. 73 at ¶ 27. However, plaintiff states that she could not

22  access CCU during this time because she could not "physically tolerate" being in the

23  CCU. *Id.* Accordingly, it appears that plaintiff is stating that due to her health she was

24

25

1    unable to be present at the general population for the activities and programming.

2    Plaintiff has not alleged that any of the defendants denied her access to the

3    programming due to deliberate indifference or for a discriminatory purpose.

4         Plaintiff's statement of facts and evidence demonstrate that the defendants have

5    granted plaintiff's requested accommodations. Additionally, plaintiff does not allege or

6    identify any instance where the defendants intentionally or with deliberate indifference,

7    failed to provide her meaningful access or a reasonable accommodation. Therefore,

8    plaintiff cannot state a claim for damages for a Title II violation.

9         Accordingly, the undersigned recommends the Court grant defendants' motion

10   and dismiss plaintiff claims for damages based on violations of the ADA with prejudice.

11            B.  Injunctive Relief

12        In addition to seeking monetary damages, plaintiff also seeks injunctive relief

13   ordering the defendants and WCCW to continue granting plaintiff the accommodations

14   she is currently receiving. Dkt. 3 at p. 11-12. In fact, plaintiff has expressed that her goal

15   in this litigation is to gain housing in a smaller unit. Dkt. 73 at ¶ 53.

16        To maintain a claim for injunctive relief, a party must show that they face an

17   imminent threat of future injury. *See, Adarand Constructors v. Pena*, 515 U.S. 200, 210-

18   11 (1995). This alleged future injury must be "(a) concrete and particularized, and (b)

19   actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defenders of*

20   *Wildlife*, 504 U.S. 555, 560 (1992)).

21        Plaintiff has expressed concerns that her current accommodations are temporary

22   and that the defendants plan to transfer plaintiff to a Medium Security Unit. Dkt. 73 at ¶¶

23   52-53. In support of this contention, plaintiff has submitted plaintiff's Individual Behavior

24

25

Management Plan. Dkt. 73-1 at p. 113-120 (Ex. AJ). The Individual Behavior Management Plan states that the Department of Correction's goal is to "support [plaintiff] to continue to move towards independent living, while providing support, and making only medically necessary accommodations." Dkt. 73-1 at p. 113. The Individual Behavior Management Plan also states that "plaintiff will engage in a progressive plan to move full time to the Medium Security Unit (MSU). She will be provided outpatient support to manage her symptoms in the less restrictive setting possible. Crisis services will be provided on the unit. Emergency services will be limited to only what is necessary." *Id.* at p. 114. Additionally, the Individual Behavior Management Plan describes a gradual transition to the Medium Security Unit with requested accommodations and coping mechanisms. *Id.* at p. 114-120.

Plaintiff does not indicate that she has been harmed by the potential transfer to the Medium Security Unit. Additionally, based on the record, it is unclear whether plaintiff will be harmed by transferring to the Medium Security Unit or what additional accommodations defendants will provide to allow plaintiff to reside in the Medium Security Unit. Plaintiff has never resided in the Medium Security Unit, therefore, any future harm based on the potential conditions in the Medium Security Unit is speculative.

Further, plaintiff states that the defendants have granted her requested accommodations during her incarceration at WCCW. There is nothing in the record that indicates that defendants will not accommodate her disability in a manner that will allow her to safely reside at the Medium Security Unit. Accordingly, plaintiff's allegations of potential future harm are too speculative to warrant granting injunctive relief.

1    For this reason, the undersigned recommends that the Court also dismiss

2    plaintiff's claims for injunctive relief.

3    　　2.  Eight Amendment

4    　　Next, plaintiff alleges that the defendants have violated her Eight Amendment

5    rights. Dkt 3. ¶¶ 46-49. For the following reasons, the undersigned recommends that the

6    Court **GRANT** defendants' motion and dismiss plaintiff's Eight Amendment claims.

7    　　　　A.  ADA Claims

8    　　First, plaintiff's Eight Amendment claims appear to be based on alleged violations

9    of the ADA. In fact, plaintiff states that her Eight Amendment claims are based on the

10   "denial of a reasonable accommodation to house her permanently in an appropriate and

11   accessible housing unit consistent with medical documentation, and instead housing her

12   in an inappropriate unit with planned full release." Dkt. 71 at p. 14 (Plaintiff's Brief in

13   Opposition to Defendant's Motion for Summary Judgment). The Ninth Circuit has

14   expressly held that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a

15   State official in [his] individual capacity to vindicate rights created by Title II of the ADA

16   …" *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Accordingly, to the extent

17   that plaintiff intends to allege a Section 1983 claim against individual defendants based

18   on violations of the ADA, plaintiff's claims fail and should be dismissed.

19   　　　　B.  Past Conduct

20   　　To the extent that plaintiff's Section 1983 claims attempt to state a claim

21   independent of her ADA claims, the claims also fail because plaintiff cannot establish an

22   Eight Amendment violation.

23

24

25

42 U.S.C. § 1983 "affords a 'civil remedy' for deprivation of federally protected rights caused by persons acting under color of state law." *Paratt v. Taylor*, 451 U.S. 527, 535 (1981) *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). To state a claim under Section 1983, a complaint must allege: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Id.* Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are presented. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985).

To state an Eight Amendment claim based on prison medical treatment under 42 U.S.C. § 1983, a plaintiff must demonstrate deliberate indifference to his serious medical needs, a violation of the proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical needs, and (2) the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)(overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc)).

A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney,* 509 U.S. 25, 32-35 (1993); *McGuckin*, 974 F.2d at 1059.

A plaintiff satisfies the second requirement that defendant's response to the need was deliberately indifferent by showing "(a) a purposeful act or failure to respond to a

prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). A prison official's response to the prisoner's serious medical need is "deliberately indifferent" if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inferences could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Existence of this subjective state of mind may be inferred "in the usual ways, including inferences from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (internal citations omitted).

Deliberate indifference may manifest through denial, delay or intentional interference with a prisoner's medical treatment. *Estelle*, 429 U.S. at 104-5; *see also, Broughton v. Cutter Labs.*, 622 F.2d 458, 459-60 (9th Cir. 1980), "or it may be shown by the way in which prison physicians provide medical care," *Jett*, 439 F.3d at 1096. Furthermore, a physician need not fail to treat a prisoner altogether in order to violate that prisoner's Eight Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). Even so, the indifference to a plaintiff's medical needs must be more than "[m]ere 'indifference,' 'negligence,' or 'medical malpractice.'" *Broughton*, 622 F.2d at 460 (citing *Estelle*, 429 U.S. at 105-06). A prisoner need not show her harm was substantial, but doing so provides additional support for the prisoner's claim that the defendant was deliberately indifferent to her needs. *Jett,* 439 F.3d at 1096.

Similarly, a prison official violates the Eight Amendment with respect to the conditions of a prisoner's confinement only when two requirements are met: (1) the

1    inmate must show that she is incarcerated under conditions posing a substantial risk of

2    serious harm; and (2) the prison official must have a "sufficiently culpable state of mind."

3    *Farmer v. Brennan,* 511 U.S. 825 (1994). Thus, the deprivation alleged by the inmate

4    must be, objectively, "sufficiently serious", and subjectively, the prison officials must

5    know of and must deliberately disregard the risk of harm to the inmate. *Farmer,* 511

6    U.S. at 834, 842. If one of the components is not established, the court need not inquire

7    as to the existence of the other. *Helling v. McKinney,* 509 U.S. 25, 35 (2018).

8        Here, it is not clear from plaintiff's complaint what conduct she alleges constitutes

9    cruel and unusual punishment in violation of the Eight Amendment. Plaintiff alleges that

10   defendants have attempted to house her in units that were inappropriate for plaintiff due

11   to her disability. Dkt. 3 at ¶¶ 19, 21, 23-25, 27; Dkt. 73 at ¶¶ 20-21, 23-26. Plaintiff

12   contends that this caused her "excruciating pain and suffering." Dkt. 71 at p. 14.

13   However, plaintiff alleges that each time she was transferred to a unit that triggered the

14   symptoms of her disability, she informed the staff at WCCW and was transferred to a

15   more suitable unit. Dkt. 3 at ¶¶ 19, 21, 25-27; Dkt. 73 at ¶¶ 15, 21, 25-26. Plaintiff

16   alleges that the longest time that she remained in a purportedly inappropriate unit was

17   for one night, that she informed defendants of her symptoms in the morning and was

18   subsequently removed that same day. Dkt. 3 at ¶ 21.

19       The plaintiff cannot maintain a claim for violation of the Eight Amendment

20   because she cannot establish that the defendants were deliberately indifferent to her

21   serious medical needs. Plaintiff does not state that defendants intentionally or with

22   deliberate indifference denied, delayed or interfered with plaintiff's medical treatment or

23   medical needs. In fact, plaintiff states that each time she suffered from the symptoms of

24

25

her purported disability she informed defendants of her conditions and defendants moved her to safe housing on the same day. Accordingly, based on plaintiff's complaint and her submitted evidence, plaintiff has failed to show that there is a genuine question of fact regarding defendant's deliberate indifference to her medical conditions.

Similarly, plaintiff state that each time she was housed in conditions that posed a substantial risk to her health due to her disability, she informed the defendants and was moved to safe housing. Accordingly, plaintiff cannot allege a claim for violation of the Eight Amendment based on the conditions of her confinement.

Based on plaintiff's complaint and the evidence she presented, the undersigned recommends that the Court grant defendant's motion with regard to plaintiff's Eight Amendment claims based on purported past conduct.

C. Future Conduct

Plaintiff's brief in opposition to defendants' motion, argues that defendants are liable under the Eight Amendment because they plan to transfer plaintiff to a Medium Security Unit at some point in the future. Dkt. 71 at p. 13-17. Plaintiff alleges that defendants know that the conditions at CCU exacerbate the symptoms of her disability and should therefore know that transferring her to a different, but purportedly similar unit, would also be inappropriate. *Id*.

However, as has been discussed, plaintiff does not allege, in her complaint or submitted evidence, that she has been harmed by any transfer or potential transfer to the Medium Security Unit. Additionally, plaintiff's Individual Behavior Management Plan states that plaintiff will be gradually transferred to the Medium Security Unit with certain accommodations and coping mechanisms. Dkt. 73-1 at 114-120. Further, there is

nothing in evidence indicating how defendants will respond if plaintiff complains of medical complications from being housed in the Medium Security Unit. Accordingly, any potential harm caused by being moved to the Medium Security Unit, a new unit to plaintiff, is speculative at this point. Therefore, plaintiff's claims for Eight Amendment violations based on future events should be dismissed.

For these reasons, the undersigned recommends that the Court should **GRANT** defendants' motion and dismiss plaintiff's Eight Amendment claims with prejudice.

3.  <u>State Law Claims</u>

Plaintiff also alleges state tort claims for intentional infliction of emotional distress. The Court should decline to exercise supplemental jurisdiction over this state law claim and dismiss it without prejudice.

A district court has discretion over whether to exercise supplemental jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. §§ 1367(a), (c)). Ordinarily, when a district court dismisses "all claims independently qualifying for the exercise of federal jurisdiction," it will dismiss all related state claims, as well. *Artis v. District of Columbia*, 138 S.Ct. 594 (2018) (citing 28 U.S.C. § 1367(c)) (2018); *see also Carlsbad Tech.*, 556 U.S. at 639-40; *see Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1001 n. 3 (9th Cir.1997) (suggesting that a district court may, but need not, decide *sua sponte* whether to continue exercising supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) once all federal law claims have been dismissed).

Although the court is not required to dismiss the supplemental state law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, fairness, convenience, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided [by federal courts] both as a matter of comity" and to promote "a surer-footed reading of applicable law.").

Because the Court is recommending dismissal of all of plaintiff's federal claims against defendants, the Court also recommends declining to exercise supplemental jurisdiction over plaintiff's state law claim and dismissing that claim without prejudice.

<u>IN FORMA PAUPERIS STATUS ON APPEAL</u>

The Court must also decide whether plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court must determine whether appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

Here, plaintiff's allegations and submitted evidence demonstrate that she cannot maintain her claims for Eight Amendment or ADA violations. Her appeal would be frivolous. Accordingly, the Court recommends that *in forma pauperis* status should be denied on appeal.

1

CONCLUSION

2      Based on the foregoing, the undersigned recommends that the Court **GRANT**

3  defendants' motion for summary judgment (Dkt. 59) and dismiss plaintiff's claims.

4  Additionally, the undersigned recommends that the Court dismiss the remaining

5  pending motions[2] as moot.

6      The parties have **fourteen (14) days** from service of this Report and

7  Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6;

8  FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for

9  purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the

10  parties shall have **fourteen (14) days** from the service of the objections to file a

11  response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set

12  for consideration on **March 13, 2020**, as noted in the caption.

13      Dated this 28th day of February, 2020.

14

15

16  *Theresa L. Fricke*

17  Theresa L. Fricke
   United States Magistrate Judge

18

19

20

21

22

23  [2] Dkt. 72 (Plaintiff's Motion to Amend Complaint), Dkt. 74 (Plaintiff's Motion to Seal
   Response/Declaration). The Court notes that Plaintiff's Response/Declaration (Dkt. 73), which is the
24  subject to plaintiff's motion to seal (Dkt. 74), was filed under seal.

25

REPORT AND RECOMMENDATION - 21